Richard A. Hubell
The Dweck Law Firm,
230 Park Avenue, Suite 416
New York, New York 10169
(212) 687-8200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

CHARLES BRADY,

               Plaintiff,

    - against -

CALYON SECURITIES (USA) F/K/A
CREDIT LYONNAIS SECURITIES(USA)
INC., CALYON, CREDIT AGRICOLE S.A.,
ERIC SCHINDLER and FRANCOIS PAGES,

               Defendants.

----------------------------------x

Docket No.

**COMPLAINT**

Jury Trial Demanded

**JUDGE STANTON**

**05 CV 3470**

RECEIVED
APR 04 2005
U.S.D.C. S.D.N.Y.
CASHIERS

     Plaintiff, Charles Brady, by his attorneys, The Dweck Law

Firm, LLP as and for his Complaint against the Defendants

respectfully alleges as follows:

    1.  By this action, Plaintiff seeks damages for

discrimination based upon national origin, age and prior military

service status, as well as for retaliation for his multiple

complaints to his supervisors and compliance personnel of

numerous violations by the Defendants of United States Securities

Laws, Regulations and Rules.  Plaintiff is a 51-year old graduate

of the United States Military Academy at West Point and a Vietnam

War  Era Veteran. Plaintiff's claims arise out of his employment

with Calyon Securities (USA) and Credit Lyonnais Securities

(USA), companies now under the control of Credit Agricole S.A.

2.   Plaintiff's claims of discrimination based upon age, national origin, and prior military service, as well as for retaliation, all arise out of his refusal to engage in conduct which would have violated United States Securities Laws, Rules and Regulations.

## JURISDICTION

3.   Plaintiff Charles Brady (hereinafter "Plaintiff" or "Brady") is an American citizen and domiciled in the State of Connecticut.

4.   Upon information and belief, Defendant Calyon Securities (USA) f/k/a Credit Lyonnais Securities (USA), Inc. and Calyon (hereinafter "Defendant Calyon") is incorporated under the laws of the State of New York. and is a citizen of the State of New York, is a broker-dealer registered with the Securities and Exchange Commission, and is a member of both the New York Stock Exchange (NYSE) and the National Association of Securities Dealers, Inc. (NASD)  and is subject to their Rules and By-Laws. Defendant Calyon's principal headquarters and primary business operations are at 1301 Avenue of the Americas, New York, New York.

5.   Upon information and belief, Defendant Credit Agricole S.A. (hereinafter "Defendant Agricole") is organized under the laws of France and a citizen of France.  Said Defendant conducts

2

business on a regular, continuous and systematic basis within the County, City and State of New York.

6. Upon information and belief and at all times hereinafter mentioned, Defendant Eric Schindler (hereinafter "Schindler") was and still is a foreign national and currently resides in the County of Westchester, State of New York.

7. Upon information and belief and at all times hereinafter mentioned, Defendant Francois Pages (hereinafter "Pages") was and still is a French national and currently resides in the County, City and State of New York.

8. Upon information and belief and at all times hereinafter mentioned, Pages was the Chairman of Calyon Securities (USA), and as such was in a supervisory position and maintained supervisory responsibilities over the activities of the Plaintiff.

9. Upon information and belief and at all times hereinafter mentioned, Eric Schindler was and is employed by Calyon as Head of Investment Banking and was and is in a direct supervisory position and maintained supervisory responsibilities over the Plaintiff.

10. Upon information and belief and at all times hereinafter mentioned, Calyon Securities (USA) is a fully-owned subsidiary of, and a related corporation to, Calyon and as a result thereof, is under the domination and control of Calyon in the management and operation of its business.

3

11.  In 2003, Credit Lyonnais Securities (USA) was acquired by Credit Agricole and the new company was named Calyon Securities (USA) Inc.

12.  Upon information and belief, Defendant Calyon Securities (USA) is a broker-dealer based in New York City which is owned by Crédit Agricole S.A.

13.  On or about February 1, 2000, the New York Stock Exchange determined that Credit Lyonnais Securities, (USA), Calyon Securities (USA)'s predecessor in-interest, violated numerous Securities and Exchange Commission Rules and New York Stock Exchange Rules, by, among other things, failing to reasonably supervise and control its employees' activities.  The firm was censured, fined and required to undertake corrective measures, including, but not limited to: requiring a review and the preparation of a report on the firm's systems and procedures, including recommendations for additional systems and procedures to ensure compliance with the Federal Securities Laws and Exchange Rules and to prevent a recurrence of the violations of the Federal Securities Laws and Exchange Rules; that the firm put in place written procedures adequate to ensure that responsibilities are clearly identified and; that supervisory responsibility and authority appropriately reside with designated officers of the firm and that internal lines give such officers the degree of control and authority necessary to carry out their

4

duties so as to ensure the firm's compliance with the rules of regulatory authorities.

14.   Jurisdiction of this action is based upon the diversity of citizenship of the Plaintiff and the Defendants under 28 U.S.C. §1332 et seq. The amount in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. Jurisdiction is also based on 28 U.S.C. §1338(a)(b), 18 U.S.C. §1514 and subject matter jurisdiction over the remaining claims for relief under 28 U.S.C. §1367(c) because those claims are so related to the Federal claims in which the Court has original jurisdiction that they form part of the same case or controversy under the United States Constitution.

## THE PLAINTIFF

15.   The Plaintiff is a graduate of the United States Military Academy at West Point.

16.   The Plaintiff honorably served in the United States Army as an Infantry Officer and is a Vietnam War Era Veteran.

17.   Thereafter, the Plaintiff attended the University of Chicago, School of Business and received a Masters of Business Administration degree.

18.   The Plaintiff holds multiple licenses to work within the securities industry, including Series 7, 16, 24, and 63, and is registered and licensed with both the NYSE and NASD.

## FACTUAL BACKGROUND

19.   In or about February of 1999, Plaintiff was employed by Credit Lyonnais Securities (USA) Inc. as an Equity Analyst.

20.   Plaintiff's initial responsibilities included performing research and analysis of industrial corporations.

21.   Plaintiff was hired by Jeffrey Posner and Pierre LaPomme, two supervisors who had no input in the decision to terminate Plaintiff.

22.   Upon his hiring, Plaintiff reported to Christina Valauri, Director of Research.

23.   In the year 2000, Plaintiff received a bonus.

24.   In the year 2000, Christina Valauri's employment was terminated.

25.   Thereafter, Plaintiff reported to Robert Goldman.

26.   In 2001, Plaintiff was promoted to Director of Equity Research.

27.   In addition to his new title of Director of Equity Research, Plaintiff also maintained his position as Senior Automotive and Related Analyst.

28.   As Director of Equity Research, Plaintiff's duties were expanded to include supervisory responsibility for ten senior analysts.

29. During the time Plaintiff was Director of Equity Research, there were significant improvements in the Research Department.

30. On January 1, 2002, the effective date of Plaintiff's promotion to Director of Equity Research, Plaintiff reported to Eric Schindler, Head of Investment Banking.

31. In 2002, the Sarbanes-Oxley Act was passed and the Self-Regulating Organizations (SRO's), i.e. NASD and NYSE, adopted their own related rules, specifically, NASD Rule 2711 and NYSE Rule 472. These rules forbid a research analyst from being subject to the supervision or control of an employee of the Investment Banking Department of the same company.

32. During 2002, the SEC, the SRO's and State securities regulators (led by New York State Attorney General Elliot Spitzer) investigated, charged and finally settled an enforcement action against ten of America's largest broker-dealers. By mid-2003, ten broker-dealers agreed to pay 1.387 billion dollars in penalties and disgorgement of profits.

33. During the same period, the President of the United States was attempting to form a coalition of foreign governments to oust the President of Iraq from power, rid Iraq of weapons of mass destruction and hunt down terrorist organizations in Iraq. The French Government was extremely vocal and opposed to these policies of the United States.

34. As a result of the opposing positions taken by the United States Government and the French Government, relations deteriorated and reached an all-time low.

35. Defendant Pages demanded that Plaintiff forward to him information, that Plaintiff had access to because of his military service background, concerning United States military activity.

36. Plaintiff objected to the foregoing demands.

37. Plaintiff continued to repeatedly voice his objection to numerous supervisors and compliance officers about his reporting directly to Schindler, Head of Investment Banking, the Defendant Calyon's failure to comply with the new mandates, and the Investment Banking Department repeatedly seeking favorable research reports in order to obtain U.S. business.

38. Defendants ignored Plaintiff's complaints because it was reaping large profits from these illegal and improper activities and was not willing to change its practices despite Plaintiff's repeated protestations.

39. In or around June 2003, the Defendant Schindler, the Head of Investment Banking, who was Plaintiff's immediate supervisor, and who reported directly to Defendant Pages, called Plaintiff into his office and told him that both he and Defendant Pages were of the opinion that the United States military and specifically Plaintiff's classmates at his West Point *alma mater* were "out of line" and "off base" by unilaterally attacking Iraq,

and that the French Government was correct in opposing the war.
Furthermore, Defendant Schindler stated that Plaintiff and his
classmates were the reason for the problems in the world.

40.  In or around the summer of 2003, Plaintiff met with
Pages and again complained about the failure of Defendants to
comply with the SRO's Rules.  He also complained to Compliance
Officers Christen Billet, George Howard, as well as Barbara
Taylor, head of internal auditing.

41.  Upon information and belief, after allegedly conducting
a financial risk/reward analysis, the Defendants determined they
would be financially better off to ignore the complaints of
Plaintiff, and at that point devised a plan to terminate
Plaintiff's employment and replace him with a younger, less rigid
(i.e. non-military) person, who would not protest and complain
about the multiple violations by the Defendants of United States
Securities Laws, Regulations and Rules.

42.  Thereafter, Defendant Schindler, whose compensation was
tied to the performance of the Investment Banking Unit, engaged
in a course of conduct to berate the Plaintiff, for his rigid
"military like" approach to following rules such as NASD Rule
2711 and NYSE Rule 472.

43.  For example, during Plaintiff's last employee review in
February of 2004, Defendant Schindler (who, in violation of the
SRO's rules, conducted the employee review) told Plaintiff that

9

he rated him poorly, not for actual job performance but for getting in the way of Investment Banking and no longer needing "an old wise man to run research."

44. The Defendant Schindler reported directly to Pages, and improperly and illegally supervised the Plaintiff (according to the SRO's Rules) and began to repeatedly describe the Plaintiff as the "old man with all the wisdom" and "the old man that is so knowledgeable in research."

45. In 2004, Plaintiff received the minimum bonus promised to him despite his exceptional performance.

46. Younger analysts under the supervision of the Plaintiff at the Defendant Calyon, with no prior military background, and subordinate to Plaintiff, received much larger bonuses than Plaintiff because of their ties to investment banking.

47. On July 1, 2004, Plaintiff gave the head of compliance a letter, again complaining of the Research Department being controlled and supervised by the head of Investment Banking.

48. Plaintiff was terminated that same day.

49. Plaintiff was replaced by a younger person under the age of 40 with a non-military background, who, upon information and belief, did not complain of the Defendants multiple violations of United States Securities Laws, Regulations and Rules.

50.  By reason of the foregoing the Plaintiff has been damaged in the sum of Ten Million Dollars.

## COUNT II

51.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 50 as if more fully set forth at length herein.

52. Upon information and belief, Defendants have unlawfully retaliated against Plaintiff in violation of NYSE Rule 2711 et seq., including but not limited to, 2711(b)(1) and 2711(j):

> 2711(b)(1) No research analyst may be subject to the supervision or control of any employee of the member's investment banking department, and no personnel engaged in investment banking activities may have any influence or control over the compensatory evaluation of a research analyst.

> 2711(j) Prohibition of Retaliation Against Research Analysts.

> No member and no employee of a member who is involved with the member's investment banking activities may, directly or indirectly, retaliate against or threaten to retaliate against any research analyst employed by the member or its affiliates as a result of an adverse, negative, or otherwise unfavorable research report or public appearance written or made by the research analyst that may adversely affect the member's present or prospective investment banking relationship with the subject company of a research report.  This prohibition shall not limit a member's authority to discipline or terminate a research analyst, in accordance with the member's policies and procedures, for any cause other than the writing of such an unfavorable research report or the making of such an unfavorable public appearance.

53.  The Plaintiff is one of the class for whose benefit NYSE Rules 2711(b)(1) and 2711(j) were enacted.

54.  As a direct and proximate result of the unlawful practices of the Defendants as alleged herein, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) Dollars.

## COUNT III

55.  Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 54 as if more fully set forth at length herein.

56. Upon information and belief, Defendants have unlawfully retaliated against Plaintiff for his repeated complaints about Defendants' multiple violations of NASD Rule 2711 et seq. Specifically, NASD Rule 2711(b)(1) provides:

> (b) Restrictions on Investment Banking Department Relationship with Research Department
>
> (1) No research analyst may be subject to the supervision or control of any employee of the member's investment banking department.

57.  The Plaintiff is one of the class for whose benefit NASD Rule 2711 was enacted.

58.  As a direct and proximate result of the unlawful discriminatory practices of the Defendants as alleged herein, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) Dollars.

## COUNT IV

59. Plaintiff repeats and realleges each and every allegation contained in Paragraph 1 through 58 as if more fully set forth at length herein.

60. During the course of Plaintiff's employment with the Defendants, Plaintiff was subjected to and became a victim of illegal and unlawful conduct by the Defendants which consisted of, among other things, systematic, continuous and unlawful discriminatory practices as more fully set forth herein, in violation of the New York Human Rights Law as contained within the Executive Law of New York State and the New York City Administrative Code.

61. Defendants subjected the Plaintiff employee to unlawful discriminatory conduct as set forth herein, with the specific intent and purpose to terminate Plaintiff's position, because he was an American Vietnam War Era Veteran, and a former West Point graduate working at a French Bank, whose executives made it known and clear that they did not agree with United States policy regarding the Iraq War, and blamed the Plaintiff and his fellow graduates of West Point for the deteriorating relations between France and the United States.

62. Prior to the termination of the Plaintiff's employment, Defendants hired an individual to replace the Plaintiff who was substantially younger and not a former military person.

63. At all times during the course of the employment of the Plaintiff by the Defendants, up until the last day of his

13

employment, Plaintiff had performed his services competently, faithfully, diligently and in an outstanding manner and was the recipient of regular salary and bonus increases.

64. As a direct and proximate result of the unlawful discriminatory practices of the Defendants, Plaintiff has been damaged in the sum of Ten Million ($10,000,000.00) Dollars.

## COUNT V

65. Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1 through 64 inclusive with the same force and effect as if fully set forth at length herein.

66. At the time Plaintiff was hired, and from time to time thereafter, Plaintiff was a licensed securities executive who can only be terminated for "just cause".

67. Plaintiff agreed to, and did fully and faithfully perform services for the employer.

68. The Defendants without legal cause or justification, terminated Plaintiff.

69. As a result of the foregoing, Plaintiff has sustained damages in the sum of not less than Ten Million ($10,000,000.00) Dollars for which judgment is demanded, and no part of which has been paid.

## COUNT VI

70. Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1

14

through 69 inclusive with the same force and effect as if fully set forth at length herein.

71. At the time Plaintiff was hired, and from time to time thereafter, Plaintiff was provided with a compliance manual which set forth the guidelines, terms and conditions of Plaintiff's employment upon which Plaintiff relied during the period of his employment with the Defendants. The compliance manual provided for strict compliance with the United States Securities Laws, Rules and Regulations.

72. Plaintiff agreed to and did fully and faithfully perform services in accordance with the compliance manual.

73. The Defendants, without legal cause or justification, breached the agreement with the Plaintiff as aforedescribed by, among other things, having failed to adhere to its compliance manual inasmuch as Plaintiff was terminated from his employment in violation of the procedures and rules set forth therein.

74. As a result of the foregoing, Plaintiff has sustained damages in the sum of not less than Ten Million ($10,000,000.00) Dollars for which judgment is demanded together with such other and further relief as is just and proper.

## COUNT VII

75.  Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1 through 74 inclusive with the same force and effect as if fully set forth at length herein.

76. At the time Plaintiff was hired, and from time to time thereafter, Defendants agreed that Plaintiff would be entitled to five weeks paid vacation.

77. Plaintiff agreed to and did fully and faithfully perform services.

78. The Defendants without legal cause or justification, breached the agreement with the Plaintiff as aforedescribed by, among other things, by having terminated Plaintiff from his employment and by having failed to pay him for his unused 20 vacation days.

79. As a result of the foregoing, Plaintiff has sustained damages in the sum of not less than $39,682.54 dollars for which judgment is demanded, together with such other and further relief as is just and proper.

## COUNT VIII

80.  Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1 through 79 inclusive with the same force and effect as if fully set forth at length herein.

81. At the time Plaintiff was terminated from his employment the defendants intentionally and maliciously sent a form U-5 to

16

the NASD which stated that Plaintiff was terminated for "performance" reasons. The U-5 failed to set forth that Plaintiff had repeatedly complained about the Defendant's multiple violations of U.S. Securities Laws.

82.  By filing the aforementioned U-5, the Defendants tortiously interfered with the Plaintiff's ability to secure new employment.

83. As a result of the foregoing, Plaintiff has sustained damages in the sum of not less than Ten Million ($10,000,000.00) Dollars for which judgment is demanded together with such other and further relief as is just and proper.

## COUNT IX

84.  Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1 through 83 inclusive with the same force and effect as if fully set forth at length herein.

85. In or about the summer of 2003, Plaintiff became very concerned that the Defendants were in violation U.S. Securities Laws, Regulations and Rules, including, but not limited to, the Sarbanes-Oxley Act, NASD Rule 2711 and NYSE Rule 472.

86.  At that time, Plaintiff received another unsolicited job offer.

87.  Plaintiff approached Francois Pages, Chairman of the Defendant to submit his resignation. At that time, Francois Pages inquired as to the reasons for Plaintiff's resignation. Plaintiff advised Defendant Pages that he was uncomfortable working for a

company that was in violation of U.S. Securities Laws, Regulations and Rules including but not limited to the Sarbanes-Oxley Act, NASD Rule 2711 and NYSE Rule 472 and that among other things, Plaintiff as Head of Research should not be reporting to Defendant Schindler, Head of Investment Banking.

88. Defendant Pages advised Plaintiff that he was aware of the problem and it would be corrected. Defendant Pages then offered to significantly increase Plaintiff's compensation and correct the problems Plaintiff complained of if he was willing to remain at the Defendant.

89. Plaintiff relied upon these representations made by Francois Pages and turned down the other job offered to him.

90. At all relevant times the Defendants knew or should have known that the aforementioned representations and/or promissory statements were false.

91. The false representations, actions and omissions alleged herein, which induced Plaintiff to remain employed by Defendants were wantonly and recklessly made and should have been reasonably anticipated to cause economic injury and suffering to the Plaintiff.

92. Contrary to the representations made by the Defendant Francois Pages that the problem of Plaintiff as Director of Research reporting to Eric Schindler, Head of Investment Banking would be corrected, it was not, up to and including the date of Plaintiff's termination from his employment at the Defendant Calyon.

93.   Since Plaintiff's termination from employment at Calyon, Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

94.   As a result of the foregoing, Plaintiff has sustained damages in the sum of not less than Ten Million ($10,000,000.00) Dollars for which judgment is demanded together with such other and further relief as is just and proper.

## COUNT X

95.   Plaintiff repeats and realleges each and every allegation contained in paragraphs of this complaint numbered 1 through 94 inclusive with the same force and effect as if fully set forth at length herein.

96.   On or about September 28, 2004, Plaintiff filed a complaint with The United States Department of Labor/OSHA pursuant to the Sarbanes Oxley Act, 18 U.S.C. §1514A.

97.   More than one hundred eighty days have passed since the filing and The United Stated Department of Labor/OSHA has not issued a final decision.

98.   The delay was not caused by the bad faith of the Plaintiff.

99.   This Court has jurisdiction to hear the complaint *de novo*.

100. The Defendants are agents and/or underwriters of numerous public companies including but not limited to Swift Energy Company, Toll Brothers Inc., Charter Operating Company,

19

Ashford Hospitality Trust, Inc., Calpine Corp. and Equity Inns, Inc. and are subject to the Sarbanes-Oxley Act.

101. As a direct and proximate result of the unlawful practices of the Defendants in violation of the Sarbanes-Oxley Act, Plaintiff is entitled to reinstatement, back pay and compensation for any special damages sustained as a result of the discrimination including but not limited to litigation costs, expert witness fees and attorneys' fees.

**WHEREFORE,** Plaintiff demands judgment against the Defendants as follows:

a) On each cause of action except Count VII for compensatory damages in favor of the Plaintiff, in the sum of Ten Million ($10,000,000.00) Dollars;

b) That this Court issue a declaratory judgment that the acts, policies and practices of the Defendants as complained of herein, violated the Plaintiff's rights as secured by the NYSE Rules, NASD Rules, New York Human Rights Law as contained within the Executive Law of the State of New York and the New York City Administrative Code;

c) An award of future income to the Plaintiff in an amount to be determined to be representative of all lost earnings, including reasonable and expected increases and all other benefits and perquisites Plaintiff would have expected to earn or receive during his lifetime, but for the unlawful conduct of the Defendants to which the Plaintiff was subjected;

d) An award of damages retroactive to the date of termination of the Employee from his employment with the Employer for lost wages and benefits resulting from the unlawful discrimination against the Employee during his employment and for said Employee to otherwise be made whole for losses suffered as a result of such alleged employment practices;

e) On Count VII for compensatory damages in favor of the Plaintiff, in the sum of Thirty Nine Thousand Six Hundred Eighty Two ($39,682.54) Dollars;

f) On Count X for reinstatement, back pay and special damages;

g) For attorneys' fees for the prosecution of this action; and

h) For exemplary damages in the sum of One Hundred Million ($100,000,000.00) Dollars.

THE DWECK LAW FIRM, LLP
Attorneys for Plaintiff

By: _____
Richard A, Hubell (RH 2306)
230 Park Avenue, Suite 416
New York, New York 10169
(212) 687-8200

C:\Documents and Settings\HPSD\My Documents\RWP\bradyfinaldraft..wpd\Dft-3-ps-4-1-05