UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                 :

CHARLES J. BRADY,                            :

                 Plaintiff,                     :
                                               :           05 Civ. 3470 (GEL)
                -v-                        :
                                               :          **OPINION AND ORDER**

CALYON SECURITIES (USA), f/k/a         :
CREDIT LYONNAIS SECURITIES (USA) INC., :
CALYON, CREDIT AGRICOLE S.A., ERIC   :
SCHINDLER and FRANCOIS PAGES,      :
                                               :
               Defendants.              :
                                             :
------------------------------------------------------------x

Richard A. Hubell, The Dweck Law Firm, LLP,
New York, New York, for plaintiff.

Barbara M. Roth, Lauren G. Krasnow, Ariana R. Jaffe,
Torys LLP, New York, New York, for defendants.

GERARD E. LYNCH, District Judge:

      Plaintiff Charles J. Brady brings this action against his former employer, Calyon Securities (USA) (formerly known as Credit Lyonnais Securities (USA)), its French parent company, Calyon, previously Credit Agricole, S.A. ("Credit Agricole"), and two individual officers and managers. Plaintiff alleges that defendants discriminated against him based on his national origin, age, and prior military service, and retaliated against him for his multiple complaints to supervisors and compliance officers about defendants' alleged violations of various securities laws, rules and regulations. Defendants move to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

The facts stated below are taken from plaintiff's complaint, the allegations of which must be accepted as true for purposes of this motion.

Plaintiff Charles J. Brady ("Brady") is a 52-year-old graduate of the United States Military Academy at West Point, and a "Vietnam War Era Veteran." (Am. Compl. ¶ 1.) After his military service, he earned an MBA degree from the University of Chicago School of Business. Brady currently holds multiple licenses to work in the securities industry, and is registered with and licensed by both the New York Stock Exchange ("NYSE") and National Association of Securities Dealers ("NASD"). (Id. at ¶¶ 17, 18.) In February 1999, Brady was hired by Calyon Securities (USA) as an equity analyst. (Id. at 19.)

Calyon Securities (USA) is a broker-dealer incorporated in New York, and an indirect wholly owned subsidiary of the French company, Calyon. Until a recent corporate acquisition, Calyon Securities (USA) was known as a Credit Lyonnais Securities (USA), Inc., and was a wholly owned subsidiary of Credit Agricole. (D. Mem. 2.) Francois Pages was the Chief Executive Officer of Credit Lyonnais Securities (USA)/Calyon Securities (USA), and Eric Schindler was the Head of Investment Banking. (Am. Compl. ¶¶ 8-9.)

In 2001, Brady was promoted and began reporting to Schindler. Brady objected to reporting directly to Schindler, who was the head of the investment banking department, because both NASD and NYSE rules and the Sarbanes-Oxley Act ("Sarbanes-Oxley) forbid a research analyst from being supervised or controlled by an employee in the investment banking department. (Id. at ¶ 31.) Brady informed various supervisors and compliance officers of his objections.

In the summer of 2003, Brady met with Pages and again complained about the company's failure to comply with the NYSE and NASD rules. Because Brady felt that his complaints were not adequately addressed, he approached Pages to submit his resignation. Pages informed Brady that he was aware of the problem and that it would be corrected immediately. (Id. at ¶ 88.) Brady turned down another job elsewhere, but his employer continued to require Brady to report to Schindler in the investment banking department. (Id. at ¶¶ 89, 92.)

Plaintiff alleges that Schindler subsequently began to berate Brady for his rigid "military-like" approach to following the NYSE and NASD rules. (Id. at ¶ 43.) During Brady's last employee review in February 2004, Schindler told Brady that he rated him poorly, not for his actual job performance, but for getting in the way of the investment banking department, and that he no longer needed "an old wise man to run research." (Id. at ¶ 42.) He then repeatedly described Brady as the "old man with all the wisdom" and "the old man that is so knowledgeable in research." (Id. at ¶ 44.)

On July 1, 2004, Brady gave the Head of Compliance a letter, complaining again about the research department being controlled and supervised by the head of investment banking. Brady was terminated that day. (Id. at ¶¶ 47, 48.)

## DISCUSSION

I.  Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in his favor. Leeds v.

Meltz, 85 F.3d 51, 53 (2d Cir. 1996). The Court will not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). To be deemed adequate at the pleading stage, a complaint need not use particular words nor demonstrate that the plaintiff will prevail on the merits, but need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)). However, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds, 85 F.3d at 53; see also De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).") (internal quotation marks omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). Because plaintiff refers to his employer's compliance manual in his complaint and it is crucial to plaintiff's claims, it may properly be considered for the purposes of this motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (determining that documents were properly considered in a motion to dismiss as plaintiff had relied on the terms and effects of the documents, and were integral to the complaint).

II.     Alleged Violations of NYSE and NASD Rules

Plaintiff alleges in Counts Two and Three that defendants have unlawfully retaliated against plaintiff in violation of NYSE Rule 2711 and NASD Rule 2711. NYSE Rule 2711

prohibits retaliation against research analysts as a result of unfavorable research reports or public appearances that may adversely affect the prospective investment banking relationship with the company that is the subject of a research report.  NYSE R. 2711(j).  NYSE Rule 2711 and NASD Rule 2711 both provide that research analysts may not be subject to supervision or control of anyone in the investment banking arm of the same company.  NYSE R. 2711(b)(1); NASD R. 2711(b)(1).

While defendants may be subject to the rules and by-laws of NYSE and NASD, the rules of NYSE and NASD do not confer a private right of action.  See Tucker v. Janney Montgomery Scott, Inc., No. 96 Civ. 1923 (LLS), 1997 WL 151509, at *3 (S.D.N.Y. April 1, 1997) (granting 12(b)(6) motion to dismiss because NYSE and NASD rules do not confer private rights of action); SSH Co., Ltd. v. Shearson Lehman Bros., Inc., 678 F. Supp. 1055, 1058 (S.D.N.Y. 1987) ("[T]he [NYSE and NASD] rules contain no express provisions for civil liability and the courts in this circuit have refused to imply a private right of action to enforce these rules."); Jaksich v. Thomson McKinnon Sec., Inc., 582 F. Supp. 485, 499-501 (S.D.N.Y. 1984) (utilizing the Cort v. Ash four-prong test to determine that a NYSE rule and NYSD constitutional provision provide no private rights of action).[1]  Thus, plaintiff has no cause of action under either rule for any alleged violations.

---

[1] Other jurisdictions have similarly found that the NYSE and NASD rules confer no private right of action.  See In re Verifone Sec. Litig., 11 F.3d 865, 870 (9th Cir. 1993); Craigshead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 493 (6th Cir. 1990);  Daniel Boone Area School Dist. v. Lehman Bros., Inc., 187 F. Supp. 2d 400, 408 (W.D. Pa. 2002); Nielson v. Greenwood, 873 F. Supp. 138, 144 (N.D. Ill. 1995); Shahmirzadi v. Smith Barney, Harris Upham & Co., 636 F. Supp. 49, 52 (D.D.C. 1985); Baghdady v. Sachs, No. CA-82-2761-T, 1983 WL 1359, at *1 (D. Mass. Sept. 2, 1983).

Plaintiff attempts to evade the absence of a private right of action by converting his claim into one for (1) breach of contract as an intended third-party beneficiary of the NASD/NYSE's rules, or (2) tortious interference with contract. (P. Mem. 9-14.) Both of these claims require the existence of a contract to succeed. See Maldonado v. Olympia Mech. Piping & Heating Corp., 777 N.Y.S.2d 730, 731 (2d Dep't 2004) (holding that a breach of contract claim was properly dismissed where plaintiff did not identify the contracts allegedly breached); Bradbury v. Woller Cope-Schwarz, 798 N.Y.S.2d 207, 209 (3d Dep't 2005) (listing the first element of tortious interference claim as requiring existence of a valid contract).

Neither Brady nor defendants have an express contract with the NASD or NYSE, and the case law upon which plaintiff relies do not support a finding of a contract that will support a viable third-party beneficiary claim. While the Second Circuit stated in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109 (2d Cir. 1990) that "the rules of a securities exchange are contractual in nature," the specific issue in that case was whether an arbitration provision of an exchange member's constitution could be superseded by a more specific customer agreement, and the court found that the exchange rules could compel arbitration. Id. at 113. In Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1995) and Credit Suisse First Boston LLC v. Chai, 317 F. Supp. 2d 380, 382 (2004), the courts noted the contractual nature of stock exchange rules, but solely in the context of whether federal jurisdiction was appropriate. Brady cites no case holding that the rules of the NASD or NYSE operate as a contract that can support a third-party beneficiary claim.

In any event, plaintiff can not be considered a third party beneficiary, merely as an employee of an NYSE member firm. As the Second Circuit has recently reminded us, under

New York law, "[t]o create a third party right to enforce a contract, 'the language of the contract' must '*clearly* evidence[] an intent to permit enforcement by the third party.'" Consol. Edison, Inc. v. Northeast Utils., No. 04-5393(L)-CV, ___ F.3d ___, ___, 2005 WL 2509300, at * 4 (2d Cir. Oct. 12, 2005), quoting Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc., 66 N.Y.2d 38, 45 (1985) (emphasis added by Second Circuit). To find a third party beneficiary, the "manifestation of the intention of the promisor and promisee [must be] sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable." Banco Espirito Santo De Investimento, S.A. v. Citibank, S.A., No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *8 (S.D.N.Y. Dec. 22, 2003).

    Nothing in the NASD or NYSE rules indicates that the member firms of either organization intended to create a right in their employees to enforce those rules as an intended third-party beneficiary of the agreement among the members to abide by them. To the contrary, the many cases holding that the rules do not permit a private cause of action in effect recognize that the rules do *not* evidence any such intent. In Barbara, the Second Circuit found that because the plaintiff was not a member of the investing public, but a former employee whose conduct was regulated by the rules, he had no private right of action under the exchange rules. 99 F.3d at 54. Barbara thus recognizes that the rules are intended to protect investors and the public, not employees. See 15 U.S.C. § 78f(b)(5) ("The rules of the exchange are designed to prevent fraudulent and manipulative acts and practices, . . . and, in general, to protect investors and the public interest.") Therefore, any intended beneficiary of any rules preventing the investment banking department from supervising a research analyst would logically be the investors or

clients, and not employees such as Brady.[2]

Plaintiff's claim for tortious interference of contract similarly fails. The elements of a tortious interference claim are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; and (3) an actual breach of the contract and damages resulting from such breach. Bradbury, 798 N.Y.S.2d at 207 (3d Dep't 2005). A viable tortious interference claim requires that plaintiff and a third party have a contract, and that defendants improperly caused the third party to breach. However, this is not what plaintiff alleges here. Instead, plaintiff alleges that Calyon and the NYSE/NASD have a contractual relationship. (See P. Mem. 12-13 (alleging that Calyon's misconduct "resulted in a breach by Calyon (USA) of the NASD and NYSE rules.").) Therefore, as a matter of law, plaintiff has no cause of action under the NYSE and NASD rules, and Counts Two and Three are dismissed.

III.     Wrongful Discharge

In Count Five, plaintiff alleges that as a "licensed securities executive," he can only be terminated for "just cause," and that defendants terminated plaintiff without legal cause or

---

[2] Cases in which courts have found third party beneficiaries to agreements between a member and the stock exchange have been limited to the arbitration context. Indeed, the logical beneficiaries of any arbitration clauses in the NYSE and NASD rules are the customers and investors. In Spear, Leads & Kellogg v. Central Life Assurance Co., 85 F.3d 21 (2d Cir. 1996), a party who was not a member of the NYSE, but was the insurer of an exchange member customer, was able to invoke the exchange rules to demand arbitration as a third party beneficiary to the arbitration clause. Id. at 26. Similarly, in Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts Partnership, 41 F.3d 861 (2d Cir. 1994), a client and investor of an exchange member was found to be a third party beneficiary and was entitled to commence arbitration proceedings. Id. at 864.

justification (Am. Compl. ¶¶ 65-69), and in Count Six, he claims that his employer's compliance manual sets forth enforceable limits on his termination upon which he justifiably relied. (Am. Compl. ¶¶ 71-73.) The first of these claims is unavailing; the second fares better.

It is "settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be hiring at will, terminable at any time by either party." Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987) (internal quotations omitted). See also Dalton v. Union Bank of Switz., 520 N.Y.S.2d 764, 765 (1st Dep't 1987) ("Plaintiff's employment was not for a specified period of time and, therefore, the hiring is presumed to be an employment at will.") Without a formal contract, a plaintiff can not bring a claim of wrongful discharge based on common-law tort theory. Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 300 (1983). The New York courts, unlike those in some other jurisdictions, have also declined to adopt an implied covenant of "good faith" in the employment relationship. Id. at 335. Here, Brady makes no allegation that he had a written contract specifying a time period for his employment, and thus is presumed to be an at-will employee.

New York law carves out only a few very narrow exceptions to the at-will employment doctrine. In Weiner v. McGraw-Hill, 57 N.Y.2d 458 (1982), the New York Court of Appeals adhered to the principle that an employer has the right to terminate an at-will employee for any or no reason. Nevertheless, an oral assurance from the company that it only terminated employees for just cause, with specific language in the employer's handbook that the company would only dismiss employees based on just cause, coupled with a clause on the employee's signed application form that specified that his employment was based on the provisions of the handbook, together permitted the former employee's claim to proceed. Id. at 465-66.

Brady does not allege that his employer's handbook stated that employees would only be terminated for just cause, or that defendants gave oral assurances that he would be terminated only for just cause. He does, however, argue that either his status as a licensed securities professional, or assurances in the handbook regarding whistleblower protection, create a contractual limit on what would otherwise be at-will employment.

In support of the former argument, Brady presumably relies on the principles discussed in Wieder v. Skala, 80 N.Y.2d 628 (1992). In Wieder, a law firm associate was permitted to sue for retaliatory discharge and breach of implied contract, because a lawyer's duties to his clients were at "the very core and . . . the only purpose of [plaintiff's] association with [the law firm]," such that the employee and employer duties were so "closely linked as to be incapable of separation." Id. at 635. Nevertheless, the Court of Appeals still refused to recognize the tort of wrongful discharge. Id. at 638-39. The New York courts have declined to expand the exception under Wieder based on duties dictated by other professional codes or statute. See, e.g., Horn v. New York Times, 100 N.Y.2d 85, 97 (2003) (finding that a physician's professional obligation to follow the Code of Medical Ethics did not impose an obligation on her employer to terminate her only for just cause); Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 315 (S.D.N.Y. 2001) (holding that violation of accountant's duties mandated by statute did not create a cause of action based on breach of implied contract for employee). Therefore, plaintiff's status as a licensed securities professional does not support a claim that he could only be terminated for "just cause," and Count Five is dismissed.

Plaintiff's improper termination claim based on language in his employer's compliance manual fares better. As discussed above, Weiner is a difficult standard for claimants to meet

when arguing for an express limitation of an at-will employment relationship.  Nevertheless, that case recognizes a narrow exception protecting employees in certain circumstances.  In Mulder v. Donaldson, Lufkin & Jenrette, 623 N.Y.S.2d 560 (1st Dep't 1995), the court held that a brokerage house auditor had a cause of action for wrongful termination based on his alleged whistleblowing, where a manual given to employees told employees to report misconduct and explicitly stated that they would be protected against reprisals.  Id. at 564.  Likewise, the court in Criado v. ITT Corp., No. 92 Civ. 3552 (LJF), 1993 WL 322837 (S.D.N.Y. Aug. 16, 1993), found that language in the employer's corporate code of conduct was sufficient to create an express limitation to at-will employment.  The corporate code stated, "If you . . . have good grounds for suspecting that any illegal or unethical conduct has occurred or is planned by anyone, you are expected to report it . . . .  Your report . . . will be treated confidentially, and you will in no way be penalized for making such a report."  Id. at *2.

Here, Brady presents an Employee Compliance Manual which similarly encourages employees to report complaints:  "Calyon . . . seeks to encourage and facilitate reporting by employees of misconduct or wrongdoing."  (Hubell Decl. Ex. 10 at 32.)  "Any employee . . . with a good faith complaint should promptly report the complaint . . . ."  (Id. at 34.)  The Manual goes on to offer protection to employees who submit complaints:

> A complaint made in the reasonable belief that a matter warranting a complaint has occurred, or may occur, even if not confirmed by subsequent investigation, will be entitled to . . . protection.  Calyon Americas shall not discharge, demote, suspend, threaten, harass, or in any manner discriminate against an employee in the terms and conditions of employment based upon any lawful actions of such employee with response to good faith reporting of Complaints or participation in a related investigation."

(Id. at 33.)

Like the manuals in <u>Mulder</u> and <u>Criado</u>, defendants' Compliance Manual advises employees to report misconduct and assures protection from any retaliation. Under New York law, such language appears sufficient to create a limitation on the at-will nature of Brady's employment.

Defendants argue that the Compliance Manual referred to in the Complaint dates from January 2005, and thus did not come into force until after Brady left the company in 2004. However, plaintiff alleges that he was provided with a compliance manual setting forth the guidelines, terms and conditions of his employment, and was terminated in violation of the procedures and rules set forth in the manual. (<u>See</u> Am. Compl. ¶¶ 71-73.) He also alleges that the same policies and procedures listed in the January 2005 manual were in place during his employment. (<u>See</u> P. Mem. 8 n.2.) While defendants persuasively argue that plaintiff could not have relied on the January 2005 manual, the issue at this stage of the case is not whether plaintiff relied on this specific manual, or whether he has submitted evidentiary matter sufficient to establish the truth of his allegations. Rather, the issue is whether plaintiff has alleged sufficient facts to state a claim of an implied contract that would lead to an express limitation of at-will employment. Plaintiff has made specific factual allegations that support this claim, and discovery will reveal whether, in fact, the January 2005 policies were also in effect during plaintiff's employment.[3] Thus, defendants' motion to dismiss Count Six is denied.

---

[3] After the present motion was fully briefed, plaintiff submitted a letter to the Court, enclosing what purports to be an earlier-dated version of the compliance manual that supports plaintiff's assertions. Defendants responded that plaintiff's letter should be disregarded as an inaccurate and unauthorized sur-reply. For the reasons stated above, plaintiff's letter and its enclosure are irrelevant and unnecessary to the Court's decision, and have not been relied on in deciding the motion.

IV.     Fraudulent Inducement

Plaintiff contends that he was fraudulently induced to remain in his employment at Calyon, when his employer assured him that certain violations of securities laws and NASD and NYSE rules would be rectified immediately. Plaintiff remained at his job, declining an offer from another employer, and alleges that Calyon never intended to correct these deficiencies, which, in fact, were never rectified. (P. Mem. 17.)

In New York, claims of fraudulent inducement based on future promises made to an at-will employee are not cognizable. A key element of a fraudulent inducement claim is reasonable reliance. Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 2004). Because an at-will employee may be terminated at any time, any reliance on any representations of future intentions, such as job security or in this case, future changes, is deemed unreasonable as a matter of law. See Arias v. Women in Need, Inc. 712 N.Y.S.2d 103, 103 (1st Dep't 2000) ("Plaintiff could not establish the reasonable reliance element since the offered employment was at-will."); Marino v. Oakwood Care Ctr., 774 N.Y.S.2d 562, 563 (2d Dep't 2004) ("Since the plaintiff was offered only at-will employment, she cannot establish reasonable reliance."); Garwood v. Sheen & Shine, Inc., 572 N.Y.S.2d 237, 237-38 (4th Dep't 1991) (affirming dismissal of claim that employer convinced plaintiff to turn down higher paying job by offering assurances of job security and increased compensation); Dalton, 520 N.Y.S.2d at 766 (holding that employee's claim of detrimental reliance on employer's alleged representations should be dismissed because employee was at-will). Because Brady is an at-will employee, he cannot allege any reasonable reliance on his employer's representations. Although the whistleblower provision, discussed above, serves as a limitation on his at-will status, that

13

provision at most protects against retaliation for reports of misconduct. Nothing in the compliance manual guarantees that an employee may rely on promises to correct alleged violations of securities laws or of NASD or NYSE rules.[4]  Therefore, Brady may not maintain an action for fraudulent inducement, and defendants' motion to dismiss Count Nine is granted.

V.      Sarbanes-Oxley Whistleblower Claim

In Count Ten, Brady brings a claim under Section 806 of the Sarbanes-Oxley Act, 18 U.S.C. 1514A, which protects employees of public companies from retaliation by the companies for engaging in certain whistleblowing activities. Brady fails to assert a valid claim under that statute.

Section 806 specifically states that (1) public companies that are issuers of a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l, (2) public companies that are issuers of securities required to file reports under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. 78o(d) or (3) officers, employees, contractors, subcontractors, or agents of such companies, may not "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of

---

[4] Plaintiff cites several cases that do not contradict this conclusion. In two of these cases, an actual signed contract existed. See Deerfield Commc'ns. Corp. v. Chesebrough-Ponds, 68 N.Y.2d 954, 956 (1986) (finding a fraudulent inducement claim when analyzing a contract for sale of goods); Backer v. Lewit, 584 N.Y.S.2d 480, 483 (1st Dep't 1992) (finding a properly stated cause of action for damages related to a six-month employment contract, but no fraudulently inducement claim for continued work after the contract had terminated). In Stewart v. Jackson & Nash, 976 F.2d 86 (2d Cir. 1992), a fraud claim was based on the plaintiff's employer law firm's misrepresentation, prior to her accepting the job, that it had "recently secured a large environment law client" and was "in the process of establishing an environment law department." In fact, the law firm had no large client, nor was it establishing an environmental law department. Id. at 89. Thus, the defendants in Stewart were found to have misrepresented a "present fact." None of these cases supports plaintiff's claim here.

employment because of any lawful act done by the employee . . . ." 18 U.S.C. 1514A(a). A specific requirement, therefore, is that defendant be a publicly traded company. See Getman v. Southwest Sec., Inc., No. 2003-SOX-8, at 18 (ALJ Feb. 2, 2004) (Administrative Review Board of the Department of Labor finding employer potentially liable under Sarbanes-Oxley for retaliating against an employee who refused to participate in alleged misconduct because employer was a "publicly traded company").[5] See also Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1368 n.1 (N.D. Ga. 2004) (specifically noting that defendant employer was a "*publicly traded company* with a class of securities registered under section 12 of the Securities Exchange Act of 1934" in a whistleblower case brought pursuant to Sarbanes-Oxley) (emphasis added, internal quotations omitted).

In this case, plaintiff has not alleged that any of the defendants are publicly traded companies, and he does not dispute their contentions that they are neither publicly traded companies nor "issuers of securities" as defined by Sarbanes-Oxley. Instead, plaintiff alleges that defendants have acted as "agents and/or underwriters of numerous public companies." (Am. Compl. ¶ 100.) This argument misses the mark.

The mere fact that defendants may have acted as an agent for certain public companies in certain limited financial contexts related to their investment banking relationship does not bring the agency under the employment protection provisions of Sarbanes-Oxley. Section 806's reference to "any officer, employee, contractor, subcontractor, or agent of such company," 18 U.S.C. 1514A(a), "simply lists the various potential actors who are prohibited from engaging in

---

[5] All discussed decisions by the Department of Labor are available at http://www.oalj.dol.gov.

15

discrimination on behalf of a covered employer." Minkina v. Affiliated Physicians Group, No. 2005-SOX-19, at 6 (ALJ Feb. 22, 2005, appeal dismissed, (ARB July 29, 2005). The Act makes plain that neither publicly traded companies, nor anyone acting on their behalf, may retaliate against qualifying whistleblower employees. Nothing in the Act suggests that it is intended to provide general whistleblower protection to the employees of any employer whose business involves acting in the interests of public companies. On plaintiff's theory, the Sarbanes-Oxley Act, by its use of the word "agent," adopted a general whistleblower protection provision governing the employment relationships of any privately-held employer, such as a local realtor or law firm, that has ever had occasion, in the normal course of its business, to act as an agent of a publicly traded company, even as to employees who had no relation whatsoever to the publicly traded company.[6]

---

[6] Numerous administrative decisions illustrate the proper application of the "agency" provision to companies that have acted as agents of publicly traded companies *with respect to their employment relationships*. Thus, a non-publicly traded company can be deemed to be the agent of a publicly traded company if the publicly traded company directs and controls the employment decisions. For example, in Kalkunte v. DVI Fin. Servs., Inc., No. 2004-SOX-56 (ALJ July 18, 2005), a non-publicly traded company, AP Services, was hired to operate a publicly traded company, DVI Financial Services, through bankruptcy. AP Services was deemed an agent of DVI Financial Services because AP Services' main principal acted as DVI's Chief Executive Officer, and admitted that he had made the decision to fire the claimant. Id. at 7. In other cases, the non-publicly traded company has been found to be almost inseparable from the publicly traded company, or subject to the same internal controls. See Morefield v. Exelon Servs., Inc., No. 2004-SOX-2 (ALJ Jan. 28, 2004) (holding that a non-publicly traded subsidiary of a covered employer could be held liable); but see Powers v. Pinnacle Airlines, Inc., No. 2003-AIR-12, at 1 (ALJ Dec. 10, 2003) (finding that a non-public subsidiary was not subject to Sarbanes-Oxley). See also Platone v. Atlantic Coast Airlines, No. 2003-SOX-27, at 19-20 (ALJ April 30, 2004) (finding that a publicly traded holding company of a non-publicly traded employer could be deemed an employer, where the holding company held itself out to be responsible for the non-publicly traded company's actions).

Therefore, as an employee of non-publicly traded companies, Brady is not covered by Sarbanes-Oxley, and Count Ten must be dismissed.

VI.   Claims Against the Parent Companies

Defendants seek to dismiss claims against the French parent companies, arguing that Brady was never employed by either Calyon or Credit Agricole, and that neither entity made any adverse decisions about Brady's employment.  (D. Mem. 13-14.)  However, Brady has adequately pleaded that all "Defendants . . . unlawfully retaliated against Plaintiff."  (Am. Compl. ¶¶ 52, 56.)  Rule 8 provides for a simplified pleading standard, and "[a]ll pleadings shall be so construed as to do substantial justice."  Fed. R. Civ. Pro. 8(f).  As the Supreme Court has instructed, "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  Swierkiewicz, 534 U.S. at 514.  While there are facts that would relieve the parent companies of any liability, there are also facts, as defendants concede (see D. Mem. 13), that would make Calyon and Credit Agricole liable.  For example, a parent company can be held liable if it participated in the unlawful activity or exercised day-to-day "control over the employee's conduct and the incidents of his employment."  Houston v. Fidelity Nat'l Fin. Servs., No. 95 Civ. 7764 (RWS), 1997 WL 97838, at *12 (S.D.N.Y. March 6, 1997).  While defendants may be correct in their allegations that Calyon and Credit Agricole lacked any involvement in overseeing plaintiff's employment, this is more properly determined at the summary judgment stage or at trial.  Plaintiff is entitled to discovery on this issue.[7]  Thus,

---

[7] Defendants cite various cases where a parent company was found not to be liable for acts of its subsidiary toward the subsidiary employees.  However, all the cases cited were decided at the summary judgment motion stage, after discovery was completed.  See, e.g.,

---

Bailey v. Synthes, 295 F. Supp. 2d 344, 347, 347 n.1, 354 (S.D.N.Y. 2003); Houston, 1997 WL 97838, at *1, *13; Kelber v. Forest Elec. Corp., 799 F. Supp. 326, 329, 331 (S.D.N.Y. 1992); Hirschfield v. Inst. Investor, Inc., 688 N.Y.S.2d 31, 31 (1st Dep't 1999).

defendants' motion to dismiss the claims against Calyon and Credit Agricole is denied.

VII.     Motion to Amend Complaint

Plaintiff has cross-moved for permission to amend his complaint to correct several typographical errors. Defendants have not opposed the motion. Thus, plaintiff's motion to amend is granted.

## CONCLUSION

Defendants' motion to dismiss is granted as to Counts Two, Three, Five, and Ten, and denied as to Count Six.[8] Defendants' motion to dismiss all claims against Calyon and Credit Agricole is denied. Plaintiff's motion to amend his complaint is granted.

SO ORDERED.

Dated: New York, New York
       November 7, 2005

_____
GERARD E. LYNCH
United States District Judge

---

v. Synthes, 295 F. Supp. 2d 344, 347, 347 n.1, 354 (S.D.N.Y. 2003); Houston, 1997 WL 97838, at *1, *13; Kelber v. Forest Elec. Corp., 799 F. Supp. 326, 329, 331 (S.D.N.Y. 1992); Hirschfield v. Inst. Investor, Inc., 688 N.Y.S.2d 31, 31 (1st Dep't 1999).

[8] Defendants did not move to dismiss Count One and Four (discrimination based on age, national origin, and prior military service), Seven (failure to compensate for accrued vacation days), or Eight (tortious interference with plaintiff's efforts to secure new employment).